1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VERONICA GAMBLE,<br><br>        Plaintiff,<br> v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. 3:19-cv-05956-RJB<br><br>ORDER ON PLAINTIFF'S MOTION TO COMPEL |

  THIS MATTER comes before the Court on Plaintiff's Motion to Compel and for Attorney Fee Award ("Motion to Compel"). Dkt. 24. The Court has considered the materials filed regarding the motion and the remaining file. For the reasons set forth below, the Court should grant, in part, Plaintiff's Motion to Compel, order *in camera* review of discovery materials redacted or withheld as privileged attorney-client communications, and renote the remaining issues of the instant motion for consideration on August 7, 2020.

ORDER ON PLAINTIFF'S MOTION TO COMPEL - 1

# I.  FACTUAL BACKGROUND

This case is a first-party insurance dispute with extracontractual claims, including, *inter alia*, bad faith handling of Plaintiff's claim and violation of the Washington Insurance Fair Conduct Act ("IFCA"). Dkt. 1-1. Plaintiff was injured in an automobile accident on July 8, 2017, when she was rear-ended while stopped at a red light. Dkt. 1-1, at 5. Immediately following the accident, Plaintiff was primarily treated for injuries to her wrist; she did not report a head injury. Dkt. 24, at 3. However, Plaintiff alleges that, in the days and weeks following the accident, she developed severe headaches and vision loss. Dkt. 24, at 3. Plaintiff discovered that she had a pituitary cyst, which Plaintiff's treating physician, Dr. Tran, believes may have started bleeding because of the accident and required surgery. Dkt. 24, at 3. Plaintiff had her first surgery on August 10, 2017, to remove part of the cyst. Dkt. 24, at 3. Plaintiff developed diabetes insipidus, a risk of pituitary surgery, and has required follow-up surgeries. Dkt. 24, at 3. Defendant apparently does not dispute the diagnosis or treatment of Plaintiff's injuries following the accident. Dkt. 24, at 3.

Plaintiff obtained policy limits of $25,000 from the at-fault driver who rear-ended her. Dkt. 1-1, at 6. Plaintiff asserts that, based on an inadequate investigation, Defendant did not pay on her underinsured motorist ("UIM") claim and took the position that Plaintiff was fully compensated by the at-fault driver's payment of $25,000. Dkt. 24, at 4.

Defendant received Plaintiff's UIM claim on February 26, 2018. Dkt. 24, at 4. Defendant assigned Cody Potthast, a Nebraska-based injury claims specialist, to adjust Plaintiff's UIM claim. Dkt. 24, at 4. Mr. Potthast apparently opined that there was not enough impact of trauma to support Plaintiff's claim. Dkt. 24, at 4. Plaintiff indicates that, when Defendant denied

Plaintiff's claim, Defendant had not performed a medical evaluation of Plaintiff's injuries. Dkt. 24, at 5.

In April 2018, Defendant hired a law firm, Lockner Crowley & Kay[1] ("Crowley," as referred to throughout Plaintiff's filings)—however, the parties sharply dispute whether Crowley was, in effect, a "quasi-fiduciary" UIM claims handler. Dkt. 29; at 5–6. Plaintiff alleges that Crowley was "hired … to perform basic claims handling investigation tasks that are part of the insurer's everyday business." Dkt. 32, at 3. In contrast, Defendant explains Crowley's role as follows:

> The law firm arranged a review of Ms. Gamble's medical records by board-certified neurosurgeon Steve Klein, M.D. and served as a conduit for obtaining Ms. Gamble's records from State Farm and other sources and providing the records to Dr. Klein. That firm also served as a conduit for Dr. Klein's two reports when they were issued by providing copies of the reports to State Farm and plaintiff's counsel. Lockner Crowley & Kay also wrote a response to an Insurance Fair Conduct Act … 20-Day Notice issued by plaintiff's counsel and advised State Farm on strategic aspects of its handling of plaintiff's UIM claim.

Dkt. 39, at 5–6 (internal citations omitted).

Defendant has apparently produced the claim file (1,995 pages) for Plaintiff in this case. Dkt. 29, at 1–2. Defendant partially or completely redacted 58 pages from the file. Dkt. 29, at 2. Defendant also produced a Privilege Log cataloging each document redacted or withheld from production. Dkt. 30, at 17, *et seq.* Defendant contends that there are two categories of materials that it withheld from production: (1) loss reserve amounts and evaluation figures for plaintiff's

---

[1] Crowley is not the same law firm that was hired by Defendant for litigation in this case; Defendant hired Wakefield & Kirkpatrick LLC for litigation. Dkts. 24, at 3, 6; 29, at 5; 32, at 2–4. Dkt. 24, at 6. Plaintiff's instant motion does not request communications between Defendant and its litigation counsel, Wakefield & Kirkpatrick LLC. Dkt. 32, at 4.

ORDER ON PLAINTIFF'S MOTION TO COMPEL - 3

UIM bodily injury claim that are protected as confidential work-product; and (2) privileged attorney-client communications between Defendant and Crowley. Dkt. 29, at 3, 7.

Plaintiff certifies that the parties met and conferred, via videoconference, about the issues in the instant motion on April 30, 2020, but that Defendant did not agree to produce all of the materials requested. Dkt. 25, at 2, ¶ 7.

On June 18, 2020, Plaintiff filed the instant Motion to Compel and requests attorney's fees in bringing the motion. Dkt. 24. Defendant filed a response in opposition to the motion. Dkt. 29. Plaintiff filed a reply. Dkt. 32.

## II.    DISCUSSION

### 1.   MEET AND CONFER REQUIREMENT

Fed. R. Civ. P. 37(a)(1) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Similarly, Local Rules W.D. Wash. LCR 37(a)(1) provides:

> Any motion for an order compelling disclosure or discovery must include a certification, in the motion or in a declaration of affidavit, that the movant has in good faith conferred or attempted to confer with the person or party failing to made disclosure or discovery in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. If the movant fails to include such a certification, the court may deny the motion without addressing the merits of the dispute. A good faith effort to confer with a party or person not making a disclosure or discovery requires a face-to-face meeting or a telephone conference. If the court finds that counsel for any party, or a party proceeding pro se, willfully refused to confer, failed to confer in good faith, or failed to respond on a timely basis to a request to confer, the court may take action as stated in CR 11 of these rules.

Plaintiff certifies that the parties met and conferred, via videoconference, about the issues in the instant motion on April 30, 2020, but that Defendant has not agreed to produce all of the materials requested. Dkt. 25, at 2, ¶ 7. It therefore appears that Plaintiff made a good faith effort to meet and confer regarding production of the materials at issue.

**2. WORK PRODUCT STANDARD**

Federal law governs assertions of work product protection. *Lexington Ins. Co. v. Swanson,* 240 F.R.D. 662, 666 (W.D. Wash. 2007) (citing *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 965–66 (3d Cir.1988); Fed. R. Evid. 501; Fed. R. Civ. P. 26(b)(3)). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf),* 357 F.3d 900, 907 (2004)).

In circumstances where a document serves a dual purpose (where it was not prepared exclusively for litigation), the "because of" test is used. *Richey*, 632 F.3d at 567–68 (quoting *Torf,* 357 F.3d at 907). Dual purpose documents are deemed prepared because of litigation if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. *Richey*, 632 F.3d at 567–68. In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation. *Id.* at 568.

Opinion work product "is virtually undiscoverable." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 n.3 (9th Cir. 2014). In the context of a bad faith settlement insurance coverage

action, the Ninth Circuit has found that, on a case-by-case basis, an insured may be able to obtain opinion work product. *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992). "[T]here is a split of authority as to whether reserve and evaluation amounts are relevant in bad-faith insurance cases." *Barge v. State Farm Mut. Auto. Ins. Co.,* C16-0249JLR, 2016 WL 6601643, at *6 (W.D. Wash. Nov. 8, 2016) (citing *Schreib v. Am. Family Mut. Ins. Co.,* 304 F.R.D. 282, 285 (W.D. Wash. 2014)). This court has noted that "loss reserve information regarding a specific insurance claim may be relevant in bad faith insurance cases" because insurers in Washington are required to maintain loss reserves in the ordinary course of business (see RCW 48.12.030(2), .090), but "reserve information that was created in anticipation of litigation is protected by the work product doctrine." *Barge,* 2016 WL 6601643, at *6 (quoting *Schreib,* 304 F.R.D. at 285).

Materials prepared in the ordinary course of business are not protected. Fed. F. Civ. P. 26(b)(3), 1970 Advisory Committee Notes. "[A]n insurer cannot delegate its obligation to make a coverage determination, which is after all its business, to an attorney and then claim 'work product privilege'" *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, C09-1574JLR, 2010 WL 3789104, at *1–2 (W.D. Wash. Sept. 23, 2010) (quoting *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co., No.* 03–1224, 2005 WL 3690565, at *7 (C.D. Ill. 2005)).

Here, work product protection does not appear applicable to the materials at issue. Defendant, at deposition, acknowledges that Crowley was hired as "a continuation of the investigation into the cause of [Plaintiff's] injuries" and to obtain a medical expert opinion on the matter. Dkt. 33, at 7–8. It thus appears that Crowley was hired, at least in part, to engage in the claim investigation process. The materials at issue thus appear related to a claim investigation and the ordinary course of business for Defendant, an insurer, and Defendant has not shown that

ORDER ON PLAINTIFF'S MOTION TO COMPEL - 6

the loss reserves figures were prepared in anticipation of litigation. Notably, loss reserves information may be relevant to Plaintiff's bad faith claim.

Therefore, the discovery materials at issue, including the redacted loss reserves (Dkt. 30, at 45–46), are not protected work product. The Court should order Defendant to produce, in full, the redacted loss reserves material at Dkt. 30, at 45–46 (Bates numbers: GAMBLE 000043 and 000178).

### 3. ATTORNEY-CLIENT PRIVILEGE STANDARD

Matters of attorney-client privilege are governed by state law. *See MKB Constructors v. Am. Zurich Ins. Co.*, C13-06110-JLR, 2014 WL 2526901, at *6 (W.D. Wash. May 27, 2014). (quoting Fed. R. Evid. 501) ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Under Washington law, attorney-client privilege is presumptively inapplicable in a first-party insurance bad faith action. *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 697 (2013).

*Cedell* creates a presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjustment process. *Id.* However, an insurer may overcome *Cedell*'s "presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigation and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own liability: for example, whether or not coverage exists under the law." *Id.* at 699. "Upon such a showing, the insurance company is entitled to an in camera review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured." *Id.*

ORDER ON PLAINTIFF'S MOTION TO COMPEL - 7

It appears that Crowley, on behalf of Defendant, was at least partially engaged in the quasi-fiduciary task of investigating and evaluating Plaintiff's UIM claim (see Dkt. 33, at 7–8), and Defendant has not shown that Crowley was instead engaged in providing it with counsel as to liability. Defendant flatly avers that materials cataloged in the privilege log as attorney-client communications are "obvious things" like letters between Defendant and Crowley. Dkt. 29, at 7–8. But it is not obvious to the Court whether these materials are privileged attorney-client communications.

Without review of the materials redacted and withheld on the basis of attorney-client privilege, the Court cannot determine whether the materials pertain to a claim investigation (and are not privileged) or provide counsel as to liability (and are privileged). Defendant has offered to provide to the Court for *in camera* review any redacted or materials withheld on the basis of attorney-client privilege. Dkt. 29, at 8, n.3.

Therefore, the Court should order Defendant to produce to the Court for *in camera* review the materials at issue entered in the Privilege Log (Dkt. 30, at 17, *et seq*.) that were redacted or withheld on the basis of attorney-client privilege. Defendant should submit the materials for review no later than August 7, 2020. The Court reserves ruling as to whether the materials are privileged attorney-client communications until after it conducts its review. The instant motion's issues of attorney-client privilege and Plaintiffs' fee request should be renoted for consideration on August 7, 2020.

### III. ORDER

**THEREFORE, IT IS HEREBY ORDERED THAT:**

- Plaintiff's Motion to Compel (Dkt. 24) is **GRANTED, IN PART;**

- Defendant shall produce to Plaintiff, in full, the redacted loss reserve information at Dkt. 30, at 45–46 (Bates numbers: GAMBLE 000043 and 000178), no later than **August 7, 2020**;

- Defendant shall produce to the Court for *in camera* review the materials at issue entered in the Privilege Log (Dkt. 30, at 17, *et seq*.) that were redacted or withheld on the basis of attorney-client privilege. Defendant shall submit the materials for review no later than **August 7, 2020**. The Court reserves ruling as to whether the materials are privileged attorney-client communications until after it conducts its review; and

- The remaining issues in Plaintiff's instant Motion to Compel (Dkt. 24) are **RENOTED** for consideration on **August 7, 2020.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 21st day of July, 2020.

ROBERT J. BRYAN
United States District Judge