1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| VERONICA GAMBLE, | CASE NO. 3:19-cv-05956-RJB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant. | |

THIS MATTER comes before the Court on Plaintiff's Partial Motion for Summary Judgment. Dkt. 35. The Court has considered the pleadings filed regarding the motion and the remaining file herein. For the reasons set forth below, Plaintiff's Partial Motion for Summary Judgment should be denied.

## I.   FACTUAL BACKGROUND

**A.  FACTS**

This case is a first-party insurance dispute with extracontractual claims including, *inter alia*, bad faith handling of Plaintiff's claim and violation of the Washington Insurance Fair

1   Conduct Act ("IFCA"). Dkt. 1-1. In the loss incident, Plaintiff was injured in an automobile

2   accident on July 8, 2017, when she was rear-ended while stopped at a red light. Dkt. 1-1, at 5.

3   Immediately following the accident, Plaintiff was primarily treated for injuries to her wrist; she

4   did not report a head injury. Dkt. 35, at 3. Plaintiff later alleged that she was thrust forward and

5   then jerked backward and hit the back of her head on the headrest. Dkt. 35, at 3. Plaintiff alleges

6   that, in the days and weeks following the accident, she developed severe headaches and vision

7   loss. Dkt. 35, at 4. Plaintiff discovered that she had a pituitary cyst, which Plaintiff's treating

8   physician believes may have hemorrhaged or expanded because of the accident. Dkt. 35, at 4.

9   Plaintiff had her first surgery on August 10, 2017, to remove part of the cyst. Dkt. 35, at 4.

10   Plaintiff developed diabetes insipidus, an apparent risk of pituitary surgery, and has required

11   follow-up surgeries. Dkt. 24, at 3.

12       Plaintiff obtained policy limits of $25,000 from the at-fault driver who rear-ended her.

13   Dkt. 1-1, at 6. Defendant did not pay on her underinsured motorist ("UIM") claim and took the

14   position that Plaintiff was fully compensated by the at-fault driver's payment of $25,000. Dkts.

15   46, at 11-12; and 49-1, at 121.

16       The parties sharply dispute whether expansion or hemorrhaging of Plaintiff's pituitary

17   cyst, the pituitary surgery, and subsequent diabetes insipidus were caused by the loss incident.

18   Additionally, the parties dispute the nature of the loss incident. Plaintiff contends that the at-fault

19   driver was traveling at approximately 30 miles per hour at the time of the crash causing her to hit

20   her head on the headrest (Dkt. 35, at 3–4); however, Defendant contends that the accident was a

21   low-speed "classic minor fender-bender" in which no air bags deployed, there was no loss of

22   consciousness, Plaintiff did not hit her head, and the parties were able to go to a nearby parking

23   lot to exchange information and leave in their respective vehicles. Dkt. 46, at 3.

24

1    On February 26, 2018, Defendant received Plaintiff's UIM claim. Dkt. 54, at 11. On

2  March 5, 2018, Defendant received Plaintiff's medical records. On March 6, 2018, a claims

3  handler for Defendant, Cody Potthast ("Mr. Potthast"), was instructed by his supervisor to have

4  the internal Medical Resources Department review the case. Dkt. 54, at 9. On March 13, 2018,

5  Mr. Potthast requested that internal medical staff review whether the diabetes insipidus was a

6  result of head trauma. Dkt. 54, at 8. On March 13, 2018, Mr. Potthast requested photos of the

7  vehicles post-collision, which, according to Defendant, show only faint scuff marks and a bent

8  license plate. Dkts. 46, at 2–3; and 54, at 8.

9    On March 19, 2018, a nurse reviewer for Defendant's Medical Resources Department,

10  Jennifer Carson, opined, in part, that diabetes insipidus "is not typically related to trauma" and

11  that "[i]t may be potentially questionable whether or not the loss event may have contributed to

12  an acute finding of diabetes insipidus." Dkt. 54, at 7. On March 27, 2019, Defendant denied

13  Plaintiff's UIM claim in writing based on a determination that Plaintiff had been compensated

14  and made whole for what was causally related to the loss incident. Dkt. 25, at 50. Plaintiff,

15  through her attorney, disputed the claim denial and asked Mr. Potthast if he would like to speak

16  with Plaintiff's doctor and other people close to Plaintiff; Mr. Potthast indicated that he would

17  review with his manager. Dkt. 49-1, at 122.

18    On March 29, 2020, Defendant decided to go forward with an independent medical

19  evaluation. Dkt. 49-1, at 121–22. On March 30, 2020, Defendant hired a law firm, Lockner

20  Crowley & Kay, to find a medical doctor to perform an independent medical evaluation. Dkt. 49-

21  1, at 121. Attorney Paul Crowley engaged Seattle neurosurgeon, Steven Klein, MD ("Dr.

22  Klein"), to perform a records review and to prepare a report. Dkt. 46, at 6. On September 17,

23  2018, Defendant provided a report to Plaintiff, in which Dr. Klein generally opines that the loss

24

1    incident did not cause Plaintiff's cyst, a bleed into the cyst or pituitary gland, or enlargement of

2    the cyst. Dkt. 47.

3    **B.  PENDING MOTION**

4        Plaintiff filed the instant motion seeking partial summary judgment that:

5            (1)  Defendant violated WAC 284-30-330(4) by refusing to pay Plaintiff's claim

6            without conducting a reasonable investigation;

7            (2)  Defendant violated WAC 284-30-370 by failing to investigate Plaintiff's claim

8            within 30 days; and

9            (3) Defendant violated WAC 284-30-330(3) by failing to adopt reasonable standards

10           for the prompt investigation of claims and failing to train its adjusters to comply with

11           Washington claims handling requirements.

12   Dkt. 35.

13       Defendant filed a response in opposition to the instant motion. Dkt. 46. Defendant argues

14   that it violated none of the WAC regulations at issue. Dkt. 46.

15       Plaintiff filed a reply in support of the instant motion. Dkt. 51. Plaintiff argues, in part,

16   that Defendant misunderstands the nature of Plaintiff's injury and the issue of causation.

17           [Plaintiff] has never claimed the collision caused her pituitary cyst
             to exist in the first place. The collision caused her cyst—which
18           already existed at the time of the collision—to expand, which
             required surgery. []Nor did Gamble contend that the impact from
19           the collision caused her diabetes insipidus. Her diabetes was an
             outcome of the surgery required to remove the cyst, which
20           expanded because of the collision.

21   Dkt. 51, at 3 (citing the declaration of Anoop Patel, M.D., Dkt. 52, at 2 (providing, in part, that

22   "[t]he logical conclusion given [Plaintiff]'s pituitary apoplexy symptoms in relation to the timing

23

24

1  of the trauma or whiplash Ms. Gamble reported from the collision is that the cyst expanded as a

2  result of the collision.")).

3  ## II. DISCUSSION

4  ### A. SUMMARY JUDGMENT STANDARD

5  Summary judgment is proper only if the pleadings, the discovery and disclosure materials

6  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

7  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

8  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

9  showing on an essential element of a claim in the case on which the nonmoving party has the

10  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

11  fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

12  the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

13  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

14  metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a

15  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

16  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

17  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

18  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

19  A determination of the existence of a material fact is often a close question. The court

20  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

21  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

22  *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

23  of the nonmoving party only when the facts specifically attested by that party contradict facts

24

specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

## B.  WASHINGTON STATE SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law to state law claims. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

## C.  WAC VIOLATIONS

The IFCA allows an insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in the superior court of this state to recover the actual damages sustained." RCW 48.30.015. The IFCA provides a list of WAC violations that give rise to treble damages or to an award of attorney's fees and costs. RCW 48.30.015(5). This list includes violations of WAC 284–30–330, which is asserted here. In *Perez-Crisantos v. State Farm Fire and Casualty Co.,* 187 Wn.2d 669 (2017), the Washington Supreme Court considered whether an insured can sue her insurance company under IFCA for Washington regulatory violations. The court held that insureds have no private cause of action under IFCA against insurers for violating the Washington regulations. *Id.* at 482–83. "The insured must show that the insurer unreasonably denied a claim for coverage or that the insurer unreasonably denied payment of benefits. If either or both acts are established, a claim exists under IFCA." *Id.* (citing *Ainsworth v. Progressive Cas. Ins. Co*., 180 Wn. App. 52, 322 P.3d 6, 20 (2014)).

Additionally, the regulations define "specific acts and practices which constitute a breach of the insurer's duty of good faith." *Tank v. State Farm Fire & Casualty Co.,* 105 Wn.2d 381, 386 (1986). "A single violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010. Under RCW 19.86.170, a violation of RCW 48.30.010 is a per se unfair trade practice and satisfies the first element of the 5-part test for bringing a [consumer protection] action under RCW 19.86.090." *Indus. Indem. Co. of the Nw., Inc. v. Kallevig,* 114 Wn.2d 907, 917 (1990).

The instant motion seeks partial summary judgment that Defendant violated WAC 284-30-330(4), 370, and 330(3).

    1.  <u>WAC 284-30-330(4)</u>

WAC 284-30-330(4) provides as follows:

> The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims:
>
>     ….
>
> (4) Refusing to pay claims without conducting a reasonable investigation.

Plaintiff argues that Defendant made its coverage decision based on suspicion and without conducting an adequate investigation. *See* Dkt. 35, at 17, *et seq*., (citing, *e.g., Kallevig,* 114 Wn.2d at 916 (an insurer acts "without reasonable justification when it denies coverage based on suspicion and conjecture …. In other words, an insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit.")). Plaintiff's argument emphasizes the deposition testimony of Mr. Potthast, which provides, in part, as follows:

1    Q. Did State Farm do anything to investigate other reasons
2    for hemorrhaging in the pituitary, other than major base – major
     skull base injury?

3    A. Outside of the – the report and [Dr. Klein's] opinion, I
4    did – I did not.

     Q. All right. Why not?
5
6    A. I felt that his report matched up with what our
     suspicions were in the beginning that we had when we initially
     evaluated with impact and the time I – I – necessarily do I feel that
7    it addressed the concern that we had.

8    Q. At the time, you had nothing more than a suspicion
     though; correct?
9
10   A. Based on evidence submitted, reviewing history of claim
     handling, it was my opinion, yeah, that it was very questionable.

11   Q. Right, but it was a suspicion; it wasn't based in
     medicine; correct?
12
     A. Correct. I am – I'm not a medical doctor.
13   Dkt. 25, at 46–47.

14   When viewed in a light most favorable to the nonmoving party, the testimony above

15   indicates only that Mr. Potthast is not a medical doctor. When considered against Mr. Potthast's

16   review of Plaintiff's medical records and photos of the vehicles following the loss incident, and

17   his consultation with a member of Defendant's Medical Resources Department (Jennifer

18   Carson), Plaintiff has not shown that the decision to deny benefits was based merely on

19   suspicion.

20   Plaintiff also argues that, before deciding to deny payment, Plaintiff should have

21   conducted a more thorough investigation of the circumstances of the crash, including an

22   independent medical examination and an investigation into future medical expenses, lost wages,

23   and non-economic damages. Dkt. 3, at 8, *et seq*. Although Defendant may have been able to

24

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

conduct a more extensive investigation, issues of fact remain as to whether any additional

investigation was reasonably necessary or warranted. "Insurers must conduct reasonable and

prompt investigations, but they need not necessarily investigate every discrete element. The

focus is not on what could have been done, but on what was actually done by the insurer."

*Bridgham-Morrison v. Nat'l Gen. Assurance Co.,* No. C15-927RAJ, 2016 U.S. Dist. LEXIS

62433, at *16 (W.D. Wash. May 11, 2016) (citations omitted). Here, before denying the claim,

Defendant reviewed Plaintiff's medical records, photos of the post-accident vehicles, and

consulted with its Medical Resources Departments.

Therefore, issues of fact remain as to whether Defendant violated WAC 284-30-330(4).

2. <u>WAC 284-30-370</u>

WAC 284-30-370 provides as follows:

> Every insurer must complete its investigation of a claim within
> thirty days after notification of claim, unless the investigation
> cannot reasonably be completed within that time. All persons
> involved in the investigation of a claim must provide reasonable
> assistance to the insurer in order to facilitate compliance with this
> provision.

Plaintiff argues that Defendant did not perform a medical evaluation of Plaintiff's claim

until it obtained Dr. Klein's opinion approximately five months after it had already decided not

to pay UIM benefits. Dkts. 35, at 21; and 51, at 6. Additionally, Plaintiff argues that Defendant

failed to keep Plaintiff's counsel advised of progress in its investigation. Dkt. 35, at 21–22.

Defendant consulted with its Medical Resources Department and issued a written

decision to deny payment within thirty days from receipt of the claim. *See* Dkt. 49-1, at 122–23.

Additionally, the declaration of Defendant's counsel, Scott Wakefield, provides that Defendant

contacted Plaintiff's counsel with updates every few weeks to advise on the status of collecting

medical information related the claim. *See* Dkt. 49, at 4, ¶ 14.

1

Therefore, issues of fact remain as to whether Defendant violated WAC 284-30-370.

2

3.   WAC 284-30-330(3)

3

WAC 284-30-330(3) provides as follows:

4

5

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims:

6

7

….

8

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

9

Plaintiff contends that Mr. Potthast is an inexperienced claims handler who was not

10

trained to adjust Washington claims. Dkt. 35, at 6, 11, *et seq*. At deposition, Mr. Potthast was

11

unable to recall the details of his training and various Washington statutes and administrative

12

codes. Dkt. 25, at 5, *et seq*. Defendant indicates that Mr. Potthast was not a Fed. R. Civ. P.

13

30(b)(6)[1] witness designated for claim handling standards and training (Dkt. 25, at 8); Defendant

14

indicates that Mr. Potthast's manager, Richard Buchmann, was the designee for those topics, and

15

Defendant provides his deposition testimony that he received training on compliance with

16

Washington regulations and that Mr. Potthast almost certainly did, too. Dkt. 46, at 7. Defendant

17

contends that it is a "recognized industry leader in training its claims personnel." Dkt. 46, at 18.

18

_____

19

[1] Fed. R. Civ. P. 30(b)(6) provides as follows:

20

21

22

23

24

(6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

Additionally, at deposition, Mr. Potthast indicated that he received initial claims processing training, has claim handling experience, and had access to job aids, including "jurisdictional materials" for different states, available to him on Defendant's intranet. Dkts. 25, at 10; and 49-1, at 214, 217, and 220.

Therefore, issues of fact remain as to whether Defendant violated WAC 284-30-330(3).

4.   <u>Conclusion</u>

Issues of fact remain as to Defendant's alleged violations of WAC 284-30-330(4), 370, and 330(3). Many of the facts that appear vital to resolving Plaintiff's claims are contested, including whether additional investigation was reasonably required before denying the claim given the parties' sharp disagreements regarding medical causation and the nature and severity of the loss incident, the timeliness and frequency of communication and updates between the parties throughout the investigation and gathering of medical evidence, and the training of Defendant's claims handler, Mr. Potthast. Therefore, Plaintiff's Motion for Partial Summary Judgment should be denied.

## III.   ORDER

**THEREFORE, IT IS HEREBY ORDERED THAT:**

- Plaintiff's Motion for Partial Summary Judgment (Dkt. 35) is **DENIED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 27th day of August, 2020.

ROBERT J. BRYAN
United States District Judge