1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10
11

VERONICA GAMBLE,

CASE NO. C19-5956 RJB

12

Plaintiff,

v.

ORDER ON DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT

13

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

14
15

Defendant.

16        This matter comes before the Court on Defendant State Farm's Motion for Partial

17  Summary Judgment.  Dkt. 62.  The Court has considered the pleadings, declarations, and

18  exhibits filed in support of and in opposition to the motion.  For the reasons set forth below,

19  Defendant's Motion for Partial Summary Judgment should be denied.

20              **I.    RELEVANT FACTS AND PROCEDURAL HISTORY**

21  **A.  FACTS**

22        This case is a first-party insurance dispute with extracontractual claims including bad faith,

23  negligent handling of Plaintiff's insurance claim, and violation of the Washington Insurance Fair

24  Conduct Act ("IFCA").  Dkt. 1-1.  On July 8, 2017, a driver, who is not party to this lawsuit,

rear-ended Plaintiff, Veronica Gamble, while she was stopped at a red light.  *Id.*  Immediately

following the accident, Plaintiff sought treatment for injuries to her wrist; she did not report a

head injury.  Dkt. 62.  Plaintiff alleges that she developed severe headaches and vision loss in the

days and weeks following the accident.  *Id.*  Plaintiff went to the hospital complaining of these

symptoms first on July 26, 2017, then again on July 31, 2017.  *Id.*  Based on images of Plaintiff's

brain from CT and MRI studies, radiologists discovered a pituitary mass later identified as a

Rathke's Cleft Cyst, advised Plaintiff that expansion of this mass was causing her symptoms, and

recommended surgery.  Dkts. 62 and 64.  Plaintiff had surgery to remove the pituitary cyst and

two additional surgeries to manage complications.  *Id.*  She alleges that the surgeries caused

Plaintiff to develop diabetes insipidus.  *Id.*

   The Parties dispute regarding the extracontractual claims center around whether Defendant's

investigation into and eventual decision to deny Plaintiff coverage for injuries relating to her

brain injury was reasonable.  Defendant argues that Plaintiff was made whole because she

received $25,000 from the at-fault driver, the driver's maximum policy limit, and $10,000 in

Personal Injury Protection ("PIP") paid by State Farm for her wrist injury.  Dkt. 62.  After

Plaintiff requested insurance coverage for damages related to her brain injury, Defendant

assigned Claim Specialist Cody Potthast to investigate.  *Id*.  Mr. Potthast requested vehicle

photos, property damage information, and Plaintiff's medical records.  *Id.*  In addition, Mr.

Potthast requested an internal medical review to determine whether head trauma could be the

cause of Plaintiff's diabetes insipidus.  *Id.* at 6.  On March 19, 2018, a reviewer for Defendant's

Medical Resources Department, Jennifer Carson, who is a licensed practical nurse, reviewed the

ER report from the time of the collision and the Mayo Clinic website.  Dkts. 64 and 65 at 6–9.

Ms. Carson opined that diabetes insipidus "is not typically related to trauma" and that "[i]t may

1    be potentially questionable whether or not the loss event may have contributed to an acute

2    finding of diabetes insipidus." Dkt. 63-1 at 268. Defendant denied Plaintiff's UIM claim, which

3    Plaintiff disputed through her attorney. Dkt. 62.

4         Around September 2018, Defendant hired law firm Lockner Crowley & Kay to help conduct

5    an independent medical evaluation. Dkt. 62. Steven Klein, MD ("Dr. Klein") reviewed

6    Plaintiff's medical records and determined that "the pituitary mass was present well before the

7    subject [motor vehicle accident]." *Id.* at 8. He further opined  that "there is no evidence of

8    hemorrhage into the pituitary gland" that could have caused Plaintiff's brain injury. *Id.*

9    Defendant argues that, therefore, its decision to deny coverage was reasonable.

10        Plaintiff argues that Defendant did not ask the right questions, which demonstrates that its

11   investigation into Plaintiff's claim was unreasonable. Dkt. 64. Plaintiff does not dispute that the

12   pituitary cyst was present at the time of the accident. *Id.* Plaintiff instead argues that trauma

13   from the motor vehicle accident caused the cyst to expand. *Id.* Plaintiff supports that argument

14   with opinions from three of her treating doctors – Dr. Hoan Tran, Dr. Anoop Patel, and Dr. Brent

15   Wisse. *Id.* at 4. Dr. Tran, Ms. Gamble's treating neurosurgeon and the first to diagnose her,

16   concluded in February 2018 that, "it is more likely than not probability that the car accident may

17   have caused bleeding in an otherwise asymptomatic pituitary adenoma." *Id.* Dr. Patel, who

18   removed Plaintiff's cyst at Harborview Hospital, concluded:

19           [T]he cyst clearly pre-dated the collision but had caused no symptoms necessitating
             medical treatment until after the collision . . . In the weeks following the collision,
20           Veronica [Gamble] complained of new intense headaches, vision loss, and weight
             gain of approximately twenty pounds. Her symptoms suggested rapid expansion of
21           the cyst and required immediate surgery. Because of the acute onset of symptoms,
             it is unlikely that Ms. Gamble had any expansion, bleeding, or hemorrhaging before
22           the July collisions. The logical conclusion . . . is that the cyst expanded as a result
             of the collision.

23

24

1   *Id.* at 4–5. Dr. Wisse, a physician at the University of Washington, similarly concluded, "the

2   timing of Ms. Gamble's collision in which she suffered trauma or whiplash, her age, the rapid

3   onset of her symptoms following the collision, and the medical imaging, lead me to conclude

4   that Ms. Gamble's pituitary cyst expanded because of the trauma from the collision." Dkt. 64 at

5   5. Plaintiff argues that Defendant's failure to investigate whether the accident caused her cyst to

6   expand, and therefore her symptoms and harm, demonstrates that Defendant's denial of Ms.

7   Gamble's claim breached its duty of good faith, was negligent, and violated the Washington

8   State Consumer Protection Act. Dkt. 64.

9   **B. PENDING MOTION**

10   In the pending motion, Defendant moves for summary judgment on the extracontractual

11   claims of insurance bad faith, negligence, IFCA violations, and on Plaintiff's claim for

12   declaratory relief regarding coverage under the insurance contract and for attorney fees and

13   costs. The Court will first discuss the standard for summary judgment, then the motion, by

14   claim.

15   **II.   DISCUSSION**

16   **A. SUMMARY JUDGMENT STANDARD**

17   Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

18   file, and any affidavits show that there is no genuine issue as to any material fact and that the

19   movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is

20   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

21   showing on an essential element of a claim in the case on which the nonmoving party has the

22   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

23   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

24

ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

1    for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

2    (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

3    metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

4    sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

5    the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986);

6    *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

7        **B.  INSURANCE BAD FAITH**

8        Defendant's motion for summary judgment on the issue of insurance bad faith should be

9    denied because there are genuine issues of material fact.

10       In Washington State, insurers owe a duty to act in "good faith, abstain from deception, and

11   practice honesty and equity in all insurance matters."  Wash. Rev. Code 48.01.030.  A claim that

12   an insurer acted in bad faith is "analyzed applying the same principles as any other tort: duty,

13   breach of that duty, and damages proximately caused by any breach of that duty."  *Smith v.*

14   *Safeco Ins. Co.*, 150 Wash. 2d 478, 485 (2003).  To establish bad faith, an insured must show

15   that "the breach was unreasonable, frivolous, or unfounded."  *Kirk v. Mt. Airy Ins. Co.* 134

16   Wash. 2d 558, 560 (1998).

17       An insurer acts in bad faith where it fails to conduct a reasonable investigation into the

18   insured's claim before denying coverage.  *Safeco Ins. Co. of Am. v. Butler*, 118 Wash. 2d 383,

19   388 (1992); *Indus. Indem. Co. of the N.W., Inc. v. Kallevig*, 114 Wash. 2d 907, 917 (1990).

20   Important factors to determine whether an investigation was reasonable include whether the

21   investigation was thorough and whether the insurer consulted qualified experts.  *See Lakehurst*

22   *Condo. Owners Ass'n v. State Farm Fire and Cas. Co.*, 486 F. Supp. 2d 1205, 1214 (W.D. Wash.

23   2007).

24

1    Genuine issues of material of fact preclude granting Defendant summary judgment on the

2    issue of bad faith denial of Plaintiff's insurance claim.  While Defendant argues that it conducted

3    a reasonable investigation before denying Plaintiff's claim, Defendant does not allege that it

4    consulted a medical doctor or a registered nurse during its initial internal investigation.  Dkt. 62.

5    Nor does Defendant argue that it inquired into whether head trauma could cause a pituitary cyst

6    to expand and, by extension, Plaintiff's injuries.  *Id*.  Three of Ms. Gamble's treating doctors,

7    doctors who knew about Plaintiff's condition when her symptoms presented and during State

8    Farm's investigation, found that the car accident more likely than not caused her cyst to expand.

9    Dkt. 64.  These doctors further concluded that the expansion of that cyst caused Plaintiff's

10   symptoms, necessitated surgery, and by extension, caused her diabetes insipidus.  *Id*.  Whether

11   Defendant asked proper questions, consulted the proper people, and conducted a thorough

12   investigation and, ultimately, whether denial of Plaintiff's claim was frivolous are questions of

13   fact that preclude summary judgment.  Defendant's motion for summary judgment on the claim

14   of insurance bad faith should be denied.

15   **C.  NEGLIGENT CLAIMS HANDLING**

16       Defendant's motion for summary judgment on the issue of negligent claims handling should

17   similarly be denied.

18       A claim for negligence arising from denial of insurance is a separate but similar cause of

19   action as an insurance bad faith.  *Safeco Ins. Co.*, 118 Wash. 2d at 612.  Both claims arise from

20   tort and, therefore, require establishing a duty, breach, causation, and damages.  *See First State*

21   *Ins. Co. v. Kemper Nat. Ins. Co.*, 94 Wash. App. 602, 612 (1999)*.*  The claims, however, are

22   "*independent of each other*" because a claim in negligence is based on the general tort duty to

23

24

1   use ordinary care, whereas an insurance bad faith claim is based on the duty to act in good faith.

2   *See id.*   "[A] party may fail to use ordinary care yet still not act in bad faith."  *Id.*

3       Although a separate question, Defendant's motion for summary judgment on the claim of

4   negligent claims handling should be denied for the same reasons that summary judgment is

5   inappropriate on the claim of insurance bad faith, discussed above.

6   **D.  CLAIMS FOR IFCA VIOLATIONS AND INJUNCTIVE RELIEF**

7       Defendant moves for summary judgment dismissal of Plaintiff's claims for IFCA violations

8   and moves for a declaratory judgment that injunctive relief is unavailable.  Both motions should

9   be denied.

10      The Washington State Consumer Protection Act, RCW 19.86, and IFCA, RCW 48.30.015,

11  work in conjunction with one another to prohibit "unfair or deceptive acts or practices . . . in the

12  business of insurance."  WAC 284-30-330; *see Kallevig*, 114 Wash. 2d at 922–23.  As with

13  insurance bad faith and negligent handling, failure to reasonably investigate an insurance claim

14  may lead to denial of coverage in violation of the IFCA.  *See Coventry Assoc. v. Am. States Ins.*

15  *Co.*, 136 Wash. 2d 269, 279 (1998) ("The problem arises when the insurer fails to investigate, in

16  bad faith . . . ").

17      To state a claim under the IFCA, "[t]he insured must show that the insurer unreasonably

18  denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits."  *Perez-*

19  *Crisantos v. State Farm Fire and Casualty Co.*, 187 Wash. 2d 669, 683 (2017).  "Disparity"

20  between an ultimate award and an offer is insufficient to state a claim under the IFCA.  *Id.* at

21  684–85.  However, "where the insurer pays or offers to pay a paltry amount that is not in line

22  with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some

23  cases, as would have been known had the insurer adequately investigated the claim) . . . the

24

1    benefits promised in the policy are effectively denied." *Jelinek v. Am. Nat'l Prop. and Casualty*

2    *Co.*, 747 Fed. Appx. 513, 515 (2018).  Injunctive relief is an available remedy under the CPA.

3    Wash. Rev. Code 19.86.090.

4        Issues of fact surrounding whether Defendant failed to reasonably investigate Plaintiff's

5    claim, again, preclude summary judgment.  Defendant argues that Plaintiff was compensated for

6    injuries to her wrist, so she was not "denied" insurance benefits.  Dkts. 62 and 63-1 at 241.

7    Should the trier of fact determine that Defendant unreasonably failed to investigate and to

8    compensate Plaintiff for injuries stemming from her pituitary cyst, that would be tantamount to

9    denial.  Should Plaintiff succeed under her IFCA claim, then injunctive relief is a remedy

10    available to the Court under the IFCA.  Defendant's motion for summary judgment on Plaintiff's

11    IFCA claim and for a declaratory judgment that injunctive relief is unavailable should be denied

12    because a rational trier of fact could find for the Plaintiff.

13    **E.  DECLARATORY JUDGMENT**

14        Plaintiff's complaint seeks judgment declaring: (1) that plaintiff is entitled to each and every

15    coverage under the policy; (2) declaring the benefits to which plaintiff is entitled; and (3)

16    declaring that State Farm is estopped from asserting any time limitation in the insurance policy

17    as a defense to coverage due to the insurer's bad faith." Dkt. 1-1 at 9–10. Plaintiff also seeks an

18    order that State Farm is liable for reasonable attorney fees and costs.  *Id.*  Defendant moves for

19    summary judgment dismissal of these claims, but issues of fact preclude their resolution at this

20    time.

21        A declaratory judgment is appropriate when (1) an actual case or controversy exists, and (2) a

22    court should exercise its discretion to award declaratory relief.  *Crowley Marine Serv., Inc. v.*

23    *Vigor Marine LLC*, 17 F. Supp. 31 1091, 1097 (2014).  In addition, a plaintiff is entitled to

24

attorney fees and costs "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract . . . ." *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37, 53 (1991).

Defendant's obligations under the insurance contract depends on determinations of fact. Similarly, whether Defendant must pay Plaintiff's attorney fees and costs depends on whether or not the trier of fact determines that Defendant's actions compelled Plaintiff to pursue legal action. Defendant's motion for summary judgment on the claims for declaratory relief should be denied.

## III.    ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion for Partial Summary Judgment (Dkt. 62) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 27th day of October, 2020.

ROBERT J. BRYAN
United States District Judge