UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERONICA GAMBLE,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

CASE NO. C19-5956 MJP

ORDER ON POST-TRIAL MOTIONS

This matter comes before the Court on Defendant's Motion to Amend the Judgment or for a New Trial (Dkt. No. 140) and Plaintiff's Motion for Attorneys' Fees and Costs, and Enhanced Damages (Dkt. No. 136). Having reviewed the Motions, the Oppositions (Dkt. Nos. 142, 144), the Replies (Dkt. Nos. 147, 148), and all supporting materials, the Court GRANTS in part and DENIES both Motions.

**BACKGROUND**

Plaintiff Veronica Gamble was injured when a car struck her car from behind. She identified her injuries to include damage to her wrists and a pituitary apoplexy. While she

recovered from the wrist injury, she has suffered lasting damage from the pituitary apoplexy, including diabetes insipidus. Gamble collected $25,000 from the at-fault driver's insurer. (Final Jury Instr. No. 12 (Dkt. No. 130).) Gamble also presented a claim for coverage to Defendant State Farm Mutual Automobile Insurance Company, her insurer, for the injuries to her wrist and the pituitary apoplexy, demanding $10,000 in PIP coverage and $50,000 in underinsured motorist (UIM) benefits. State Farm provided $10,000 in PIP benefits related to the wrist injury but refused to pay any UIM benefits for the pituitary apoplexy. (Id.)

Gamble then sued State Farm for breach of contract, bad faith, negligence, and violations of Washington's Insurance Fair Conduct Act (IFCA) and Washington's Consumer Protection Act (CPA). At trial, Gamble presented evidence that State Farm wrongly and unreasonably denied her claim for coverage for her pituitary injuries. She also presented evidence in support of her claim that State Farm improperly handled her claim for coverage for her pituitary injuries.

The jury found in Gamble's favor on her breach of contract claim. In reaching that decision, the jury was instructed that it could find State Farm breached the insurance policy by failing to pay insurance benefits and/or by violating of one of Washington's claims handling regulations. (Final Jury Instr. No. 17.) It was also instructed that in awarding any amounts for this claim it was not to consider the $35,000 Gamble already recovered. (Id. Instr. No. 31.) The jury was also presented the Parties' stipulation that Gamble incurred "$258,181.95 in medical expenses reasonably necessary for the diagnosis and treatment of her pituitary cyst expansion, pituitary-related injuries, and aftercare." (Id. at Instr. 12.) The jury found State Farm breached the insurance policy and awarded Gamble $50,000 in damages. It was not asked to identify the nature of the damages or precisely how State Farm breached the contract.

On all four extracontractual claims, the jury found in Gamble's favor and separately awarded the following: (1) $50,000 in actual damages under IFCA, and an additional $150,000 in enhanced damages under IFCA, (2) $150,000 in damages for State Farm's bad faith, (3) $500,000 for State Farm's negligence; and (4) $50,000 for State Farm's violation of the CPA. For each claim, the verdict form reiterated the jury instructions' admonishment that the jury was to "determine the amount of damages for [each] individual claim as if it were the only claim that was asserted or proven" and that damages had to be "proven by a preponderance of the evidence . . . regardless of any damages awarded for any other claim." (Verdict Form (Dkt. No. 133).) Question 12 of the Verdict Form then asked the jury: "Without duplication, what are the total amount of damages caused by State Farm's violation of the Insurance Fair Conduct Act, State Farm's failure to act in good faith, State Farm's negligence, and State Farm's violation of Consumer Protection Act?" (Id. at 5.) During deliberations the jury asked for clarification about this Question and the meaning of "duplication," to which the Court provided the following instruction: "You duplicate if you count the same category of damages more than once." (See Ex. 3 to the Declaration of Scott Wakefield (Dkt. No. 141-1 at 20).) In response to Question 12, the jury listed $950,000, which is also the sum of all claims, not just the extra-contractual claims about which Question 12 asked. When presented with the verdict form and while the jury was still empaneled, State Farm did not ask for any clarification or seek to question the jury.

## ANALYSIS

**A.     Motion to Amend the Judgment and for a New Trial**

Before considering Gamble's request for attorneys' fees and costs and enhanced damages under the CPA, the Court considers State Farm's request to amend the judgment or for a new trial.

### 1. Legal Standard

Under Rule 59 "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). A "Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Wood v. Ryan, 759 F.3d 1117, 1121 (9th Cir. 2014). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," so the Court is instead "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). The Ninth Circuit has also recognized "four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011). But the court is not necessarily limited to these four situations. See id.

"Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd, 762 F.3d 829, 842 (9th Cir. 2014). "[T]he district court can weigh the evidence and assess the credibility of the witnesses" and

"may sua sponte raise its own concerns about the damages verdict." Id. (citation omitted). "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Id. (citing Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990)).

    **2.    Breach of Contract Offset**

State Farm argues that the jury's award for Gamble's breach of contract claim must be reduced by $35,000 to reflect the amount she already obtained from State Farm and the at-fault driver's insurer. State Farm is correct.

"It is well established in Washington that insureds are not entitled to double recovery, and thus after an insured is 'fully compensated for his loss,' an insurer may seek an offset, subrogation, or reimbursement for PIP benefits already paid." Sherry v. Fin. Indem. Co., 160 Wn.2d 611, 618 (2007) (citation omitted). And "[a]n insurer has no subrogation-like rights against its own insured unless provided for by contract." Id. Stated differently, "[a]n insurer is entitled to an offset, setoff, or reimbursement when both: (1) the contract itself authorizes it and (2) the insured is fully compensated by the relevant 'applicable measure of damages.'" Id. at 619.

State Farm has a contractual right to an offset from the jury's award of $50,000 for the breach of contract claim. State Farm's policy with Gamble entitled it to an offset for "any damages . . . that have already been paid to . . . the insured" by the at-fault person or their insurer "for the bodily injury to the insured" and/or for any PIP benefits paid by State Farm. (Trial Ex. 1 at 22.) This provision applies here because the jury found Gamble was entitled to $50,000 as the total compensation for all of her injuries caused by the collision and she already recovered $35,00 for some of these injuries. (Verdict Form Question No. 1 (Dkt. No. 133).) In opposition, Gamble argues that the jury only awarded her damages for her pituitary apoplexy and

ORDER ON POST-TRIAL MOTIONS - 5

that she never received insurance payments for these injuries that could be offset. But the Court cannot properly read the jury's verdict to have excluded damage to Gamble's wrist. The jury was presented evidence as to Gamble's injured wrist and pituitary apoplexy and it was instructed to identify damages for all injuries Gamble suffered without differentiation. The Court construes the verdict as awarding damages for Gamble's wrist and pituitary injuries without differentiation. The Court therefore offsets the breach of contract damages by $35,000 and GRANTS State Farm's motion on this issue.

Gamble additionally argues that no offset applies because she sought more than $50,000 in damages from the collision and did not recover that amount. But the jury was asked to identify the total damages caused to Gamble by the collision, and it found $50,000 to be the proper amount. While the jury was told that Gamble's past medical expenses for her pituitary apoplexy exceeded $50,000, it found that $50,000 would fully compensate her for all injuries caused by the collision, including her pituitary apoplexy. As such, Gamble is considered "fully compensated by the relevant 'applicable measure of damages'"—here, $50,000. See Sherry, 160 Wn.2d at 619.

By that same logic, the Court rejects State Farm's suggestion that the jury awarded Gamble no damages for her pituitary apoplexy. It is true that the jury did not award Gamble the full amount of the agreed-upon damages related to her pituitary apoplexy—$258,181.95. (See Final Jury Instr. No. 12.) But the jury was not required to award this amount when determining the damages for Gamble's breach of contract claim. (See Final Jury Instr. No. 31.) The mere fact the jury chose a different number does not lead to the conclusion that the jury found Gamble suffered no pituitary injuries from the collision. The jury was not asked to make that specific determination. And the verdict can be plausibly and reasonably read to reflect the jury's decision

that Gamble's pituitary apoplexy was caused by the collision, but that $50,000 was the proper amount. The Court therefore rejects State Farm's argument that the jury vindicated its position that Gamble only suffered a wrist injury and that State Farm correctly refused to pay UIM benefits for her pituitary injury.

### 3. Gamble's Extra-Contractual Claims

State Farm argues that all of Gamble's extracontractual claims must be dismissed because the jury's breach of contract damage award is insufficient "as a matter of law" to sustain any extracontractual claims. This argument lacks merit.

State Farm's argument misconstrues the one case on which it turns: Keller v. Allstate Ins. Co., 81. Wn. App. 624 (1996). State Farm suggests that Keller stands for the proposition that a small amount of unpaid insurance benefits can never sustain extracontractual claims. That is incorrect. In Keller, the court explained that a plaintiff cannot prove bad faith and extracontractual claims by only showing that the insurer's pretrial settlement offer was lower than the award obtained at trial. Keller, 81 Wn. App. at 633. Instead, to prove bad faith or that "a defendant acted reasonably, fairly, or deceptively, it is [also] necessary to consider the circumstances surrounding the allegedly improper act." Id. The court must inquire as to the circumstances around the pretrial conduct because "[a]doption of a strict number comparison approach would make an insurer strictly liable for damages any time its pretrial evaluation of a claim turned out to be substantially less than the jury's verdict." Id. State Farm is therefore incorrect that Keller stands for the proposition that "as a matter of law" a small jury award for unpaid benefits can never support extracontractual claims. (See Mot. at 8.) Such a conclusion would contradict Keller's refusal to adopt a "strict number comparison approach." Keller, 81

Wn. App. at 633. Extracontractual claims can be pursued even if the amounts owed are small, provided that there is additional evidence of insurer misconduct.

Considering the legal framework announced in Keller, the Court finds no error in allowing the jury's verdict on Gamble's extracontractual claims to stand. The jury not only determined that there were unpaid insurance benefits, but also heard and considered substantial and compelling evidence about State Farm's unreasonable claims handling process. Based on the evidence presented at trial, the jury was well within its rights to find that State Farm acted unreasonably, negligently, in bad faith, and in violation of IFCA and the CPA when handling Gamble's claim for UIM benefits. The fact that the jury ultimately only awarded $15,000 in unpaid insurance benefits does not mean that the jury's verdict cannot stand. When coupled with the evidence about State Farm's claims handling, that amount of unpaid benefits support the jury's finding of liability on all extracontractual claims. See Keller, 81 Wn. App. at 633. The Court DENIES the motion as to this issue.

**4.  Duplication**

State Farm argues that the jury improperly duplicated damages for the extracontractual claims and a new trial should be granted. This argument lacks merit.

State Farm correctly identifies a mathematical error in the jury's answer to Question 12 on the verdict form. Question No. 12 asked the jury to identify the total amount of non-duplicative damages for Gamble's four extracontractual claims. (Verdict Form at 8 (Dkt. No. 133).) Although the sum of the jury's award for the extracontractual claims totals $900,000, the jury entered $950,000 when answering the question. But Question No. 12 was not the only question on damages. The verdict form asked the jury to identify the damages for each claim separately and to "determine the amount of damages for [each] individual claim as if it were the

only claim that was asserted or proven" and to consider that damages had to be "proven by a preponderance of the evidence . . . regardless of any damages awarded for any other claim." (Id. at 1-8.) The jury listed damages for each claim, as requested. And Question No. 12 merely sought confirmation that the jury had not duplicated the damages for the extracontractual claims.

There are two reasons why the jury's mathematical error does not warrant amending the judgment or a new trial. First, State Farm failed to timely object to or identify the issue in the verdict form when the jury was still empaneled. The Ninth Circuit has made clear that objections to the adequacy of a verdict form or any apparent inconsistencies should be made while the jury is still empaneled. See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1110 (9th Cir. 2001). For example, in Yeti, the Ninth Circuit rejected as untimely the defendants' objections to a verdict form where, among other things, defendants "could have objected after the verdict had been announced but before the jury was released." Id. The court reasoned that this would have allowed the district court to have corrected any problems ex ante and develop a full record. See id. State Farm could have and should have identified this issue as to Question No. 12 after the verdict form was distributed but before the jury were released. This could have resolved the issue altogether or created a complete record to decide whether any problem exists. This alone justifies the denial of State Farm's motion on this issue.

Second, even if the Court were to consider State Farm's argument as timely, the Court would not find the jury's response to Question No. 12 warrants a retrial. The Court first considers that it owes a "duty under the Seventh Amendment to harmonize a jury's seemingly inconsistent answers if a fair reading allows for it." Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co., 405 F.3d 764, 771 (9th Cir. 2005). Here, a fair reading of the verdict form suggests simply that the jury either incorrectly added the amounts of the extracontractual claims

or included the $50,000 it awarded Gamble for the breach of contract claim. That error does not undermine the jury's answer to this question, which was directed at identifying any duplication in the damage awards across the extracontractual claims. By identifying all of the damages it awarded as non-duplicative, the jury fully answered the question that its verdict includes no duplication. That conclusion applies even if the jury made a mathematical error because it identified all damages as nonduplicative. The Court therefore harmonizes the full verdict form by reading the answer to Question No. 12 to mean that the damages the jury awarded are non-duplicative. The Court DENIES State Farm's request for a new trial on this issue.

**B.      Motion for Attorneys' Fees**

Gamble's Motion asks the Court to award her attorneys' fees and costs, as well as a damage enhancement under the CPA. The Court finds Gamble's request for fees and costs to be largely proper and awards treble damages under the CPA.

### 1.      Attorney Fees Standard

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). To determine the fee award for a prevailing party, the Court begins by calculating a lodestar "by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Ewing v. Glogowski, 198 Wn. App. 515, 521 (2017) (accord under Washington law). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. And "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

1    Under federal law, the Court determines the hourly rate by considering the "evidence
2    produced by the parties, including fee rates of other attorneys in similar practices, awards in
3    comparable cases, counsel's experience and reputation level, and the market rates, as well as two
4    additional Kerr factors: the novelty/difficulty of the issues and the preclusion of other work."
5    Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). And under Washington law, if the "attorneys
6    in question have an established rate for billing clients, that rate will likely be a reasonable rate."
7    Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983). But "[t]he attorney's usual
8    fee is not, however, conclusively a reasonable fee and other factors may necessitate an
9    adjustment," such as "the level of skill required by the litigation, time limitations imposed on the
10   litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability
11   of the case." Id. And "[t]he reasonable hourly rate should be computed for each attorney, and
12   each attorney's hourly rate may well vary with each type of work involved in the litigation." Id.

13   In deciding the number of hours "reasonably expended," the Court considers whether the
14   time on matter that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at
15   434. The requesting attorney "must provide reasonable documentation of the work performed" to
16   enable this determination. Bowers, 100 Wn.2d at 597; Hensley, 461 U.S. at 433 (accord). "This
17   documentation need not be exhaustive or in minute detail, but must inform the court, in addition
18   to the number of hours worked, of the type of work performed and the category of attorney who
19   performed the work (i.e., senior partner, associate, etc.)." Bowers, 100 Wn.2d at 597.

20   **2.     No Fee Agreement Necessary**

21   Rather than attack the hourly rates requested or the hours expended, State Farm argues
22   that the Court cannot rule on Gamble's fee request until she produces a copy of the fee
23   agreement with counsel. But State Farm fails to identify any authority for the proposition that
24

ORDER ON POST-TRIAL MOTIONS - 11

determining a fee award requires production of a fee agreement. The only binding authority on which State Farm relies merely stands for the proposition that a fee agreement can be discovered. (Def. Opp. at 3 (citing United States v. Horn, 976 F.2d 1314 (9th Cir. 1992)).) But the fact that a fee agreement is discoverable does not make it relevant to the Court's analysis of an attorneys' fee request. The fee agreement is only relevant here to show whether Gamble's attorneys represented her on a contingency basis. But that fact is not in dispute—she was represented on a contingency basis. As such, the Court finds no basis to review the agreement before resolving the pending motion. This is consistent with one of the primary cases on which State Farm relies, where the court awarded fees after noting the contingent nature of the representation even though "[n]o other information regarding the fee agreement was provided to the court." Castellano v. Charter Commc'ns, LLC, No. C12-5845 RJB, 2014 WL 1569242, at *7 (W.D. Wash. Apr. 17, 2014). The Court will therefore determine the reasonable fees to be awarded using the lodestar methodology as set for the above in Section B(1).

### 3. Lodestar Calculation

Having reviewed Gamble's submission and noting State Farm's lack of opposition to any of the specific rates requested or hours expended, the Court makes the following findings as to Gamble's fee request.

First, as to the hours expended, counsel identifies the following time spent by two attorneys and one paralegal as follows: (1) Kathryn Knudsen (attorney) 667.63 hours; (2) Ryan Pauley (attorney) 166.2 hours; and (3) Paige Lewis (paralegal) 76.25 hours. Given the relative complexity presented in the case and the length of the trial, the Court finds the time expended to be reasonable.

Second, as to the rates, counsel asks for the following to be awarded: (1) $475/hour for Knudsen; (2) $300/hour for Pauley; and (3) $300/hour for Lewis. Both Knudsen and Pauley identify that their requested rates have been granted in other cases. Additionally, Gamble provides the declaration of Franklin Cordell, who avers that the rates requested are within the Seattle market rate for attorneys who litigate on behalf of policyholders and reasonable given the skill and reputation of counsel. (See Declaration of Franklin Cordell ¶¶ 9-13.) The Court finds that the rates requested for Knudsen and Pauley are reasonable and reflect the skill and reputation of counsel, as well as the difficulty and contingent nature of their representation of Gamble. But the Court does not find that Lewis's requested rate to be reasonable. Lewis' requested rate appears far afield from paralegal rates the Court has previously approved. For example, the Court recently found a rate of $175/hour reasonable for a paralegal with 40 years of experience in the local Seattle market. See Deane v. Pacific Financial Group Inc., et al., C19-722 MJP, Dkt. No. 185 at 7 (W.D. Wash. Feb. 10, 2021). The Court is aware that Cordell states that Lewis is "one of the most skilled and experienced paralegals with whom [he has] ever worked" and that she functions efficiently at "an extremely high level." (Cordell Decl. ¶ 14.) But as Cordell acknowledges, her hourly rate is "on the higher end of paralegal rates" in Seattle. This declaration does not allow the Court to justify Lewis' requested rate when compared to prior paralegal awards in the same legal market. See Deane, Dkt. No. 185 at 7; Goldstine v. FedEx Freight Inc., No. C18-1164 MJP, Dkt. No. 410 at 7-8 (W.D. Wash. Mar. 12, 2021). Additionally, Gamble points to no judicial order awarding Lewis her requested rate. And the Court has not been presented with sufficient work product to measure Lewis' skill in any way that might justify a rate that far exceeds what it has previously awarded in similar litigation. The Court also notes that Lewis' requested rate is the very same rate billed by attorney Pauley. Based on these

considerations, the Court awards Lewis a rate of $175/hour, which is consistent with the market rate in Seattle for a paralegal with Lewis' experience and reputation.

Third, the Court rejects Gamble's request for a lodestar multiplier. Under Washington law, "[t]he lodestar amount may be adjusted to account for subjective factors such as the level of skill required by the litigation, the amount of potential recovery, time limitations imposed by the litigation, the attorney's reputation, and the undesirability of the case." Brand v. Dep't of Labor & Indus. of State of Wash., 139 Wn.2d 659, 666 (1999), as amended on denial of reconsideration (Apr. 10, 2000), as amended (Apr. 17, 2000) (citing Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983); Rules of Professional Conduct (RPC) 1.5(a)). A multiplier is not warranted on the record before the Court. Aside from the unusual pituitary injury, the case presented a factual pattern and legal issues typically found in policyholder litigation. While the claims required skilled lawyers to achieve a successful result, the Court has already factored counsel's skill and reputation in determining their reasonable hourly rates. And while there may have been risk in taking this case on, it was not particularly undesirable. The Court therefore denies the request for a multiplier.

The Court AWARDS attorneys' fees to Gamble in the amount of $380,328.00.

**4.     Costs**

Gamble asks the Court to award $33,651.78 in litigation costs. State Farm has not disputed the reasonableness of these costs and the Court separately finds them to be reasonable. The Court GRANTS the request and AWARDS $33,651.78 in costs.

In her motion, Gamble represents that she has separately submitted a Bill of Costs for $2,336.90. Based on the Court's review it finds no evidence of such a submission. The Court

thus notes that its award of costs in this Order does not include the $2,336.90 Plaintiff claims is part of a separate Bill of Costs that appears not to have been filed.

### 5. CPA Damages

Gamble asks the Court to award $25,000 in enhanced damages under the CPA. The Court finds that this request is proper.

The Court has discretion to award treble damages for a CPA violation. RCW 19.86.090. Treble damages are based upon the "actual damages" awarded, which are $50,000 in this case. (See Dkt. Nos. 133, 135.) The statutory maximum enhancement is $25,000.00. RCW 19.86.090. "Damages, for purposes of the Consumer Protection Act, must be broadly construed so that the beneficial purpose of the Act may be served." St. Paul Fire & Marine Ins. Co. v. Updegrave, 33 Wn. App. 653, 658 (1983) (citing RCW 19.86.920). The purposes behind the CPA's treble damage provision include (1) financial rehabilitation of the injured consumer; (2) encouraging private citizens to bring actions benefiting the public; (3) deterrence; and (4) punishment. Sing v. John L. Scott, Inc., 83 Wn. App. 55, 71, 920 P.2d 589 (1996) rev'd on other grounds, 134 Wn.2d 24 (1997).

The Court finds an award of treble damages to be appropriate and in line with the purposes of the CPA. The award will help Gamble return to her pre-loss condition. And the treble damages award furthers the goals of the CPA to encourage private suits and deter State Farm from engaging in improper claims handling. While the Court bases its treble damage award only on the CPA damages awarded, the Court finds the treble damages consistent with the jury's substantial award on Gamble's extracontractual claims, including the enhanced damages award for Gamble's IFCA claim. The jury was presented with substantial evidence about State Farm's unreasonable and improper claims handling, and its award reflects its agreement with Gamble

that State Farm's actions were unjustified and unreasonable. The Court therefore GRANTS Gamble's motion on this issue and AWARDS $25,000 in treble damages under the CPA.

## CONCLUSION

State Farm has convinced the Court that it is entitled to an offset of $35,000 to the jury's award of damages for Gamble's breach of contract claim. On that issue, the Court GRANTS State Farm's Motion. But State Farm has otherwise failed to convince the Court it should make any other amendment to the judgment in its favor or that a new trial is warranted. The Court DENIES the remainder of the motion.

The Court largely finds Gamble's request for attorneys' fees and costs to be proper. Although the Court rejects the multiplier request and adjusts the requested paralegal rate, the Court AWARDS $380,328.00 in attorneys' fees and $33,651.78 in costs. The Court also AWARDS treble damages under the CPA of $25,000. On this basis, the Court GRANTS in part and DENIES in part Gamble's motion.

The Court directs the Clerk to enter an amended judgment to reflect the offset of $35,000, the treble CPA damages of $25,000 and the award of attorneys' fees and costs.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 10, 2022.

Marsha J. Pechman
United States Senior District Judge